WARREN *v.* RANNEY AND TRUSTEE AND CLAIMANT.

*Married Woman's Property.  Possession by Husband.  Fraudulent Conveyances.  Trustee Process.*

R., who owed W. on a promissory note, having sold T. a quantity of wood then standing upon his farm on which W. held a mortgage to secure other indebtedness, conveyed his farm to one of his sons, who, on the same day, conveyed it to his mother, for an alleged consideration of $600 for money that she claimed to have let her husband have twenty-eight years before; and the same day, R. mortgaged his personal property to his sons.  Soon afterward, the wife hired her sons to cut and draw the wood, and gave T. notice that the wood belonged to her; and when the wood was all delivered, T. gave her a due-bill for the sum due therefor, and she gave her sons her note for the cutting and drawing.  The conveyances of the farm, and the chattel mortgage, as well as the bargain with the sons for cutting, etc., were, to the knowledge of both R. and his wife, made to prevent W. from collecting his debt.  Afterward W. brought this action on R's note, and summoned T. as trustee; and R's wife appeared as claimant.  *Held,* that it must be presumed, in the absence of any showing to the contrary, that defendant received and held the money that he received from his wife, in virtue of his marital rights; and that as the conveyances were made with the intent on the part of both the defendant and the claimant to prevent plaintiff from collecting his debt, the case came within the statute relating to fraudulent conveyances, and that the trustee was chargeable.

ASSUMPSIT on a promissory note.  A commissioner was appointed to take the disclosure of the trustee, who reported in substance as follows:

In August or September, 1875, the defendant had negotiations with the trustee about selling it 100 cords of wood to be delivered the ensuing winter, and gave the trustee to understand that the pay therefor was going to the plaintiff, who held the note in suit, and also a larger claim secured by mortgage, whereupon the trustee went to see the plaintiff about arranging the time of payment. At the time the bargain for the wood was consummated, early in October, the defendant and his wife, who was by arrangement of parties allowed to appear as claimant, were both present with the trustee, and the claimant did most of the talking and tried to remove from the mind of the agent of the trustee the impression that the pay for the wood was to go to the plaintiff.  The wood was then standing uncut on a farm in Hampton, N. Y., on which the plaintiff had a very large mortgage, the defendant owning the equity of

redemption, and the claimant having no interest otherwise than as defendant's wife. On December 4, a small part of the wood having been cut, but none having been delivered, the defendant and his wife conveyed said farm to a son who was then living with them, who on the same day conveyed it to the claimant. Each deed expressing a consideration of $12,000. On the same day the defendant executed a chattel mortgage of all his personal property to his two sons, who were then living at home. On trial the claimant introduced evidence tending to show an actual consideration of six hundred dollars, claiming that she had let her husband have that amount of money that she claimed in her own right in small sums from time to time, at and soon after their marriage twenty-eight years ago, which money he used with money of his own to purchase property that he afterwards disposed of, and the title to which he took in his own name. Some time after December 4, the claimant made a bargain with her two sons to cut and draw the wood in question at the price of $0.80 per cord for cutting, and $1.55 per cord for drawing, and after it was all delivered she gave to each of them her written promise, executed in N. Y., to pay $115 therefor with interest. Neither of those sums, nor any part thereof, has been paid. I find that a part of the wood was chopped by the defendant in person, and about seventeen cords of it by one Dickenson, who was paid for his work by goods from a store at Hampton, on defendant's account, to the amount of about $3, by $5 in cash from the claimant, and by produce raised on the farm of the defendant, a part of which was the same that was mortgaged to the defendant's sons, to the value of about $6. At some time between December 4 and January 1, the claimant gave the trustee notice that the wood belonged to her; and in the latter part of January, when about sixty cords had been delivered, a due-bill was given for the same, running to the claimant, and on April 1, after the wood was all delivered, that due-bill was given up, and a due-bill for the whole, payable April 10, was given. The plaintiff foreclosed his mortgage on said premises, and obtained title thereto on September 20, 1876, the farm being sold for less than one half of the amount unpaid on the mortgage. I find that the transfer of the real estate from the defendant to his wife, and the chattel mortgage to his sons, as well as the bargain with the sons to cut and draw the wood, were made for the purpose of preventing the plaintiff from collecting his debt, and were known to and participated in by the claimant. And I am of the opinion that the Troy Conference Academy is trustee of the defendant for the price of the wood, it being $500, which, with interest to March 13, 1877, amounts to $520.25.

The court, at the September Term, 1877, Ross, J., presiding, rendered judgment for the plaintiff to recover of the claimant his costs, and that the trustee be adjudged chargeable on the report; to which the claimant excepted.

*George M. Fuller*, for the claimant.

It is not disputed that the claimant let the defendant have money, and that the deed of the farm was made for the purpose of paying that debt. It follows that there was no fraud, and that the defendant could not have maintained a suit in his own name against the trustee. *Hoyt* v. *Swift*, 13 Vt. 129; *Weller* v. *Weller*, 18 Vt. 55.

A grant or an assignment of goods and chattels made in satisfaction and discharge of a *bona-fide* debt, is not void merely because it is made with intent to defeat the expected execution of a judgment creditor. *Wood* v. *Dixie*, 7 Q. B. 892.

*John B. Beaman*, for the plaintiff.

The Troy Conference Academy should be adjudged trustee. The contract with the trustee for the sale of the wood vested the right of recovery in the defendant.

The conveyance from the defendant to his wife having been made with intent to prevent the plaintiff from collecting his debt, and the purpose having been known to and participated in by his wife, was void, even if made on good consideration. *Edgell* v. *Lowell*, 4 Vt. 405; *Jones* v. *Spear*, 21 Vt. 426; *Crane* v. *Stickles*, 15 Vt. 252; *McLane* v. *Johnson*, 43 Vt. 48; Gen. Sts. c. 65, s. 28; Gen. Sts. c. 113, s. 32.

But it was without consideration; for even if the claimant gave money to her husband as claimed, it became his property; and to claim as a consideration that which had no existence in law, makes conclusive in law the fraudulent purpose of the parties. *Rawlins* v. *Rounds*, 27 Vt. 17.

The opinion of the court was delivered by

POWERS, J.   The defendant's proposition, that a debtor may lawfully convey his property to one of his creditors in satisfaction

of his debt, notwithstanding that the effect may be to defeat the rights of his other creditors, is unquestionably sound. The statute relating to fraudulent conveyances does not reach the case of payments made *bona fide* of existing debts.

The conveyance of the farm by the defendant and his wife to his son, and the conveyance of the same on the same day by the son to his mother, arc sought to be upheld on the ground that the purpose of the parties was, to pay an indebtedness of the defendant's to his wife. The expressed consideration of these conveyances is twelve thousand dollars; the actual indebtedness to the wife is claimed to be six hundred dollars for money furnished the defendant by his wife twenty-eight years ago.

The commissioner makes no finding of fact in relation to this pretended indebtedness to the wife, to the effect that it is valid, but leaves the inference to be drawn that is fairly deducible from the facts detailed.

In order to make this claim enforceable against the defendant, something more than the fact that the wife let her husband have the money must appear. The presumption from what appears is, that the defendant received and holds the money in virtue of his marital rights; and this must stand as the fact of the case, until the contrary appears. This presumption, in view of all that appears, is evidently not of the class known as " violent " presumptions.

The commissioner expressly finds that the conveyances were made for the purpose of hindering the plaintiff in the collection of his debt, and that this purpose was shared in by both the defendant and his wife.

The case then comes directly within the statute relating to fraudulent conveyances, and the plaintiff's debt may be enforced.

Judgment affirmed.